UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | |
| Plaintiff, | Civil Action No. 6:20-cv-1165-ADA |
| v. | |
| SALESFORCE.COM, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## DEFENDANT SALESFORCE'S RULE 12(b)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I.  THE '928 PATENT IS INVALID UNDER 35 U.S.C. § 101 ............................................1

    A.  Legal Standard ................................................................................................1

    B.  Patent Background ..........................................................................................2

    C.  *Alice* Step One: The '928 Patent Is Directed To The Abstract Idea Of Generating A Multi-Level Hierarchy ............................................................4

    D.  *Alice* Step Two: The '928 Patent Provides No Inventive Concept And Recites Only Generic Steps And Components .............................................7

    E.  Claim Construction Is Not Necessary To Find Claim 1 Invalid .............................9

    F.  The Remaining Claims Do Not Alter This Analysis ............................................10

II. WSOU'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED ..............................................................................................................12

    A.  WSOU Cannot Plead Pre-Suit Knowledge ...........................................................12

    B.  WSOU Cannot Plead The Requisite Specific Intent For Induced Infringement ................................................................................................13

    C.  WSOU Cannot Plead The Requisite Lack Of Substantial Non-Infringing Uses For Contributory Infringement ..........................................................16

III. CONCLUSION ...................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 1342 (Fed. Cir. 2013)...................................................................... 6

*Achates Reference Pub., Inc. v. Symantec Corp.*,
  2:11-CV-294-JRG-RSP, 2013 WL 693955 (E.D. Tex. Jan. 10, 2013) report and
  recommendation adopted, 2:11-CV-294-JRG-RSP,
  2013 WL 693885 (E.D. Tex. Feb. 26, 2013) ......................................................... 15

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) ....................................................................... 14

*Artrip v. Ball Corp*,
  735 F. App'x 708 (Fed. Cir. 2018)........................................................................ 16

*Affinity Labs of Texas, LLC v. Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)............................................................................... 7

*Affinity Labs of Texas, LLC v. Blackberry Ltd. *,
  No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)..................... 14

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*,
  No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ....................... 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................... 2, 3, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 1

*Becton, Dickinson & Co. v. Baxter Int'l, Inc.*,
  127 F. Supp. 3d 687 (W.D. Tex. 2015)................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................. 1

*In re Bill of Lading Transmission & Processing Sys . Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)............................................................................. 15

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).............................................................................. 7

*Castlemorton Wireless, LLC v. Bose Corp.*,
  No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)........... 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ........................................................................... 1

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ......................................................................... 8

*Coffelt v. NVIDIA Corp.*,
  680 F. App'x 1010 (Fed. Cir. 2017) ................................................................... 4

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015) ..................................................................................... 11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................................... 5, 7

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*
  No. 6:14-CV-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015),
  report and recommendation adopted, No. 6:14-CV-751-JRG-JDL,
  2015 WL 13885437 (E.D. Tex. July 15, 2015)) ............................................. 14

*Customedia Techs., LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) ......................................................................... 4

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021) ....................................................................... 11

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
  558 Fed. Appx. 988 (Fed. Cir. 2014) ................................................................. 8

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ....................................................................... 13

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ......................................................................... 8

*eResearchTechnology, Inc. v. CRF, Inc*,
  186 F. Supp. 3d 463 (W.D. Pa. 2016) ................................................................ 8

*FatPipe Networks India Ltd. v. XRoads Networks Inc.*,
  No. 2:09-CV-186-DN, 2015 WL 12778762 (D. Utah Sept. 22, 2015) .............. 11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ......................................................................................... 12

*In re Karpf*,
  758 F. App'x. 960 (Fed. Cir. 2019) .................................................................. 10

*In re Morinville,*
   767 F. App'x 964 (Fed. Cir. 2019) ................................................................. 6, 7

*Inhale, Inc v. Gravitron, LLC,*
   No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ................................... 15

*Intellectual Ventures I LLC v. Capital One Financial Corp.,*
   850 F.3d 1332 (Fed. Cir. 2017) ................................................................. 7, 9, 10, 11

*Intellectual Ventures I LLC v. Erie Indemnity Co.,*
   850 F.3d 1315 (Fed. Cir. 2017) ................................................................. 2

*Intell. Ventures I LLC v. Symantec Corp.,*
   838 F.3d 1307 (Fed. Cir. 2016) ................................................................. 2, 4, 5

*Intell. Ventures I LLC v. AT & T Mobility LLC,*
   235 F. Supp. 3d 577 (D. Del. 2016) ................................................................. 11

*MONEC Holding AG v. Motorola Mobility, Inc.,*
   897 F. Supp. 2d 225 (D. Del. 2012) ................................................................. 14

*Morales v. Square, Inc.,*
   75 F. Supp. 3d 716 (W.D. Tex. 2014) ................................................................. 9

*Parus Holdings Inc. v. Apple Inc.,*
   No. 6:19-cv-00432-ADA, Text Order Granting D.I. 54 (W.D. Tex. Feb. 20, 2020) .............. 12

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.,*
   No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) ................................ 9

*Promotional Techs., LLC v. Facebook, Inc.,*
   No. 3:11-CV-3488-P, 2012 WL 13026789 (N.D. Tex. Sept. 27, 2012) ................................ 13

*Ruby Sands LLC v. Am. Nat'l Bank of Texas,*
   No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ........................ 13, 15

*Semantic Search Techs. LLC v. Aldo U.S., Inc.,*
   425 F. Supp. 3d 758 (E.D. Tex. 2019) ................................................................. 10

*Simio, LLC v. FlexSim Software Products, Inc.,*
   983 F.3d 1353 (Fed. Cir. 2020) ................................................................. 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
   874 F.3d 1329 (Fed. Cir. 2017) ................................................................. 2

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ................................................................. 2

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) .......................................................................... 5

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306, 1333-34 (Fed. Cir. 2015) ........................................................... 4

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    Civil Action No. 13-676-LPS-CJB (D. Del. Sep. 30, 2015) ................................. 3

*VLSI Tech., LLC v. Intel Corp.*,
    No. 6:19-cv-00256-ADA, 2019 WL 11025759 (W.D. Tex. Aug. 6, 2019) ........... 12

*Whitserve LLC v. Dropbox, Inc.*,
    2019-2334 (Fed. Cir. Apr. 26, 2021) .................................................................. 7

## <u>Statutory Authorities</u>

35 U.S.C. § 101 .......................................................................................................... 1, 8

## <u>Rules</u>

L.R. CV-7(h) ................................................................................................................. 16

Local Rule CV-5 ........................................................................................................... 18

Defendant salesforce.com, inc. ("Salesforce") respectfully requests the Court dismiss the Complaint because U.S. Patent No. 8,280,928 ("the '928 patent") is directed to ineligible subject matter under 35 U.S.C. § 101.  Salesforce further requests, in the alternative, dismissal of Plaintiff WSOU Investments, LLC's ("WSOU")'s induced and contributory infringement claims as inadequate under *Iqbal*/*Twombly*.

*First*, the '928 patent does not meet the test for subject matter eligibility under 35 U.S.C. § 101 because its claims are directed to the abstract idea of organizing information into a hierarchy with multiple levels –with elements at the bottom level ("data objects") and other elements at higher levels ("descriptors"), where the elements at the bottom level can be linked to multiple elements at higher levels, and the elements at the higher levels can be linked to each other– is an abstract idea, and the claims fail to recite any technological innovations that would make them patent eligible.  The Federal Circuit has time and again affirmed the dismissal of such claims at the pleading stage.

*Second,* WSOU's indirect infringement allegations are deficient under this Court's basic pleading standards.  The allegations rest on Salesforce's purported knowledge of the patent from the Complaint, which the Court has confirmed is insufficient to mount an indirect infringement claim.  Also fatal to its allegations is WSOU's failure to allege specific intent for induced infringement and lack of substantial non-infringing uses for contributory infringement.  On each of these separate grounds, the Court should grant Salesforce's motion and dismiss WSOU's claims of indirect infringement.

## I.     THE '928 PATENT IS INVALID UNDER 35 U.S.C. § 101

### A.     <u>Legal Standard</u>

Subject matter eligibility under Section 101 is a question of law that may be resolved on a motion to dismiss where no factual allegations exist that, taken as true, prevent resolving eligibility

as a matter of law. *See, e.g., ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).

Determination of patent eligibility under Section 101 is a two-step process. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). The Court must first determine whether the patent claims are directed to an abstract idea. *See id.* at 217. Courts "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). If the focus of the claims is a long-standing practice, or a process that could be performed by a human without a computer, then the claims are directed to an abstract idea. *See Alice*, 573 U.S. at 219; *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).

At *Alice* step two, the court determines whether the claims include an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotation marks omitted). If the "additional features" described in the claim recite nothing more than "well understood, routine, conventional activity," the abstract idea is patent-ineligible. *Intell. Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1328 (Fed Cir. 2017). To be patent-eligible, a claim must do "significantly more than simply describe th[e] abstract method" and state "apply it." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

### B.   Patent Background

The '928 patent, entitled "Multi-level Enmeshed Directory Structures," is directed to multi-level data structures to organize information. *See* '928 patent at 1:58-2:2. The patent recognizes that "conventional" data structures typically associate each data object with a unique descriptor, and each descriptor with a unique path of higher-level descriptors. *See id.* at 1:28-42. According to the '928 patent specification, an example of this conventional data structure is a file system

directory, where a data object (*i.e.*, file) is associated with a unique set of descriptors—*i.e.*, a directory file path. *Id.*

For example, a file named "UniqueFileName.doc" and located within the directory C:\Patent Applications\Non-Provisionals is part of a multi-level hierarchy, where the file itself is the data object at the bottom of the hierarchy, the filename "UniqueFileName.doc" is a first level descriptor within the hierarchy, the directory "Non-Provisionals" is a next level descriptor above "UniqueFileName.doc," and the directory "Patent Applications" is a next level descriptor above "Non-Provisionals."

The patent also describes an "enmeshed" data structure, in which each object can have more than one descriptor and each descriptor can have multiple higher-level descriptors. *See id.* at 1:58-2:2.

Claim 1, the sole claim identified in the Complaint, recites generating such a structure:

 1. A method for generating a multi-level hierarchical directory structure and establishing relationships between descriptors, the method comprising:

    selecting an initial data object;

    creating one or more descriptors associated with the data object wherein each of said descriptors are further associated with one or more corresponding descriptors thereby forming a multi-level relational tree;

    determining the relationship between the one or more descriptors;

    creating a hierarchical structure linking the different levels of descriptors;

    updating a corresponding database; and

    identifying a single initial descriptor that links a plurality of descriptors and two or more predecessor descriptors linking another single descriptor to thereby establish relationships between different descriptors relative to themselves and to the single initial descriptor.

*Id.*, cl. 1 (emphasis added). The patent's dependent claims simply recite more additional data organizational aspects of this same abstract hierarchy, such as relating descriptors (claim 2); determining relationships between descriptors (claims 4, 16); generating "acyclic" descriptors (claims 3, 8, 12, 15, 19); and generating the structure for a social network (claim 20). Other dependent claims recite generic computer technology, including a graphical user interface presenting descriptors and objects to navigate the directory (claims 5, 7, 10, 14, 18) and a radio node, a router, or a gateway (claim 11).

### C.   *Alice* Step One: The '928 Patent Is Directed To The Abstract Idea Of Generating A Multi-Level Hierarchy

The '928 patent's alleged innovation of generating a multi-level hierarchy is an abstract idea. *See Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2017 WL 5768938, at *7 (D. Del. Sept. 30, 2015) ("The Court easily concludes (indeed, it is not really disputed here) that the concept of representing information in a hierarchy amounts to an abstract idea."); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333-34 (Fed. Cir. 2015) ("Using organizational and product group hierarchies to determine a price is an abstract idea that has no particular concrete or tangible form or application. It is a building block, a basic conceptual framework for organizing information."); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (invalidating claims that "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem").

Claim 1 recites steps for generating a "multi-level hierarchical directory structure," all of which can easily be performed by a human with pen and paper, which is a hallmark of an abstract idea. *See Coffelt v. NVIDIA Corp.*, 680 F. App'x 1010, 1011 (Fed. Cir. 2017) (finding claims-at-issue directed to an abstract idea because they "recite nothing more than a mathematical algorithm that could be implemented using a pen and paper"); *Symantec*, 838 F.3d

4

at 1318 (finding representative claim abstract because "there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper"). Indeed, Figure 3 of the '928 patent depicting an embodiment of the claimed multi-level hierarchy confirms how easily the purported invention can be implemented using pen and paper.

| '928 patent Claim 1 | Library Book Catalog |
|---|---|
| A method for generating a multi-level hierarchical directory structure and establishing relationships between descriptors, the method comprising: | A librarian catalogs books in a library. |
| selecting an initial data object; | The librarian selects a book (*i.e.*, data object) *The Hunt For Red October* to add to the library. |
| creating one or more descriptors associated with the data object wherein each of said descriptors are further associated with one or more corresponding descriptors thereby forming a multi-level relational tree; | The librarian begins to classify the book in order to fill out a card catalog entry by using one or more descriptors, such as author (*e.g.*, Tom Clancy), title (*e.g.*, *The Hunt For Red October*), subject matter (*e.g.*, espionage), and format (*e.g.*, Kindle, pdf, paperback, hardcover, or audiobook), and relatd works). These descriptors are associated with one or more higher level descriptors —such as subject matter being associated with genre (*e.g.*, action and adventure, mystery, or romance), and format being associated with recording medium (*e.g.*, electronic, print, audio)—to form a multi-level relational tree of attributes classifying the book. |
| determining the relationship between the one or more descriptors; | The librarian, when filling in the card to add to the card catalog for the *The Hunt For Red October*, determines the relationship between subject matter (espionage) and genre (action and adventure). |
| creating a hierarchical structure linking the different levels of descriptors; | The librarian creates the hierarchical structure linking the attributes for the *The Hunt For Red October* by completing the card will all the attributes filled in. |
| updating a corresponding database; and | The librarian updates the library's card catalog by adding the card for *The Hunt For Red October* to the catalog. |
| identifying a single initial descriptor that links a plurality of descriptors and two or more | A library patron (or the librarian) identifies the title of the book in which they are interested - |

| predecessor descriptors linking another single descriptor to thereby establish relationships between different descriptors relative to themselves and to the single initial descriptor. | *The Hunt For Red October* (a single initial descriptor) and. From the card, the patron sees that *The Hunt For Red October* is associated with a number of other descriptors, such as that it is an action and adventure book, and that more particularly it is an espionage book, and that is it is available in print and electronic form, and more particularly in paperback and as an e-book. The card also includes a list of other related works by Tom Clancy, such as *Clear and Present Danger* (predecessor single descriptors that link to another single descriptor). |

Although the specification of the '928 patent purports to apply these steps in the context of a computer system, "there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Symantec*, 838 F.3d at 1318. The Federal Circuit has previously found that the "concept of data collection, recognition, and storage is undisputedly well-known" and that "humans have always performed these functions," such that a claim's requirement to use a computer and a scanner does not change the fact that the "claims are drawn to the basic concept of data recognition and storage." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). In addition, claims directed to the automation of a manual process are uniformly found abstract. *See Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co*., 916 F.3d 1363, 1367 (Fed. Cir. 2019) ("[The patent] seeks to automate 'pen and paper methodologies' to conserve human resources and minimize errors. This is a quintessential 'do it on a computer' patent [whose claims are directed to abstract ideas]."); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1339, 1342 (Fed. Cir. 2013) (claims to automated methods for generating task lists were patent-ineligible).

Claim 1 is strikingly similar to the representative claim affirmed as ineligible in *In re Morinville*, 767 F. App'x 964 (Fed. Cir. 2019). In that case, the Federal Circuit affirmed that "the concept of organizational structure . . . is a well-established business practice, and an idea

with no particular concrete or tangible form." *Id.* at 968.  Similar to claim 1, the patent-ineligible

claim in *In re Morinville* was directed to generating a hierarchical operational structure where

roles are associated with unique positions in the hierarchy.  *See id.* at 966-67.  The representative

claim recited:

> 1. A method implemented in a computer for dynamically generating a hierarchical
> functional structure from a hierarchical operational structure, comprising the steps:
> [ (a) ] *providing a hierarchical operational structure of unique positions within
> an organization*;
> [ (b) ] associating one of a plurality of roles with each of the positions, wherein
> each of the roles has a corresponding major function, and wherein at least a subset
> of the roles is non-unique;
> [ (c) ] *identifying a first one of the positions*;
> [ (d) ] *identifying positions in the hierarchical operational structure that are
> subordinate to the first one of the positions and that have roles which have at
> least one functional level in common with the role of the first one of the positions*;
> and
> [ (e) ] *generating a hierarchical functional structure of the identified positions*;
> and
> [ (f) ] controlling user access to business processes based on the hierarchical
> functional structure;
> [ (g) ] *wherein each of the steps is automatically implemented in the computer*.

*Id.* (brackets in original) (emphasis added).  Like claim 1 of the '928 patent, the *Morinville* claim

generates a hierarchical structure by associating descriptors (e.g., roles) to data objects (e.g.,

positions) in the hierarchy, identifying an initial position in the hierarchy, identifying other

positions with particular roles in the hierarchy relative to that first position, and completing the

steps using a well-known and generic technological component to implement the abstract idea.

*See id*.  Given its similarity with the *Morinville* claims-at-issue, claim 1 of the '928 patent is

likewise drawn to a patent-ineligible information architecture.

### D.  *Alice* Step Two: The '928 Patent Provides No Inventive Concept And Recites Only Generic Steps And Components

There is no inventive concept contained in the claim limitations of the '928 patent,

considered individually or in combination.  The steps of the abstract idea recited in claim 1—

generating a multi-level hierarchy through organizing the descriptors of an object by their relationships to each other—are generic and routine, as shown above.  '928 patent, cl. 1.  It is black letter law that simply performing the functional steps that are part of an abstract idea cannot supply an inventive concept that renders the abstract idea non-abstract.  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

As a preliminary matter, claim 1 is not even directed to a computer-implemented technology on  its face: it merely recites "updating a corresponding database" and thus does not even require generic computer components.  Furthermore, even confining claim 1 to a computer implemented context, updating a database is well-known, routine, and conventional activity.  A database is merely any structured collection of data, and the Federal Circuit has routinely confirmed that the "concept of data collection . . . and storage is undisputedly well-known." *Content Extraction*, 776 F.3d at 1347; *Whitserve LLC v. Dropbox, Inc.*, 2019-2334, 2021 WL 1608941, at *4 (Fed. Cir. Apr. 26, 2021) ("[R]equesting, transmitting, receiving, copying, deleting, and storing data records . . . is a fundamental business practice that 'existed well before the advent of computers and the Internet.'") (internal citation omitted); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016) ("[T]he claims added only generic computer components such as an interface, network, and database, and that recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.") (internal quotation marks omitted); *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("a database [is a] generic computer element[]").  Indeed, the "Background" of the '928 Patent acknowledges that conventional file systems are merely one type of database.  '928

Patent at 1:20-21 (emphasis added).  Accordingly, claim 1 of the '928 patent fails *Alice* step two and is invalid under 35 U.S.C. § 101.

### E.      Claim Construction Is Not Necessary To Find Claim 1 Invalid

The lack of a *Markman* hearing is not an impediment to granting Salesforce's motion. Patent eligibility may be determined even before claim construction if the patentee fails to explain how a term's construction "could affect the analysis." *Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (same); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (explaining that "[the Federal Circuit] ha[s] repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced," and concluding that "it was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage" where the patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis").

In the instant case, there is no construction which WSOU can propose that would let it avoid the outcome that the '928 patent is directed to ineligible subject matter.[1]  Terms such as "data object," "descriptor," and "database" cannot be construed so as to imbue representative claim 1 with an inventive concept or make it non-abstract because the specification does not

---

[1]  To the extent WSOU may argue that claim construction is needed, the burden is on WSOU "(1) identify for the Court claims that need to be construed, and (2) explain how construction of such terms could affect the Court's analysis." *eResearchTechnology, Inc. v. CRF, Inc*, 186 F. Supp. 3d 463, 470 (W.D. Pa. 2016), *aff'd sub nom. EResearchTechnology, Inc. v. CRF, Inc.*, 681 F. App'x 964 (Fed. Cir. 2017); *see Cyberfone Sys., LLC v. CNN Interactive Group, Inc*., 558 Fed. Appx. 988, 991 n. 1 (Fed. Cir. 2014) ("Cyberfone argues that claim construction must precede the § 101 analysis, but does not explain which terms require construction or how the analysis would change. It merely points to claim language that we consider here. There is no requirement that the district court engage in claim construction before deciding § 101 eligibility.").

expressly define these terms to be more than well-known and/or generic technological elements. *See Capital One Bank*, 792 F.3d at 1368 ("a database, a user profile . . ., and a communication medium, are all generic computer elements.").  "It is therefore unnecessary to await formal claim construction in order to resolve the issue presented in this motion." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016), *aff'd sub nom. Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*, 684 F. App'x 970 (Fed. Cir. 2017) (granting motion to dismiss ineligible claims); *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 722 (W.D. Tex. 2014), aff'd, 621 F. App'x 660 (Fed. Cir. 2015) (same); *see also Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 689 (W.D. Tex. 2015), aff'd, 639 F. App'x 652 (Fed. Cir. 2016) (granting summary judgment motion brought before claim construction when "there is no reasonable construction of any term that would bring these claims within the bounds of patentable subject matter").

### F.      The Remaining Claims Do Not Alter This Analysis

The remaining claims do not alter the eligibility analysis and are thus similarly ineligible. Like claim 1, independent claims 6, 9, 13, and 17 are all directed to the same multi-level directory structure.  These claims recite a "network management system" (claim 6), "mesh network system" (claim 9),"computer readable storage medium for storing instructions" (claim 13), or "content server" (claim 17) performing certain claim 1 steps.  The generic hardware elements recited in claims 6, 9, and 17 do not rescue the claims, nor do claim 13's even more minimal contributions. *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1288 (Fed. Cir. 2013), *aff'd*, 573 U.S. 208, (2014) (Judge Lourie concurring) (noting generic computer device claims are "merely method claims in the guise of a device" and "do not overcome the Supreme Court's warning to avoid permitting a 'competent draftsman' to endow abstract claims with patent-eligible status."); *In re Karpf*, 758 F. App'x. 960, 961 (Fed. Cir. 2019) (generic language directed to storing information

in a "non-transitory machine-readable storage medium" does not suffice to confer eligibility). Furthermore, the replacement of "data object" with "mesh clients" and "client servers" in claims 9 and 17 simply limit the abstract idea in claim 1 to a particular field of use, which cannot impart eligibility.  *See Capital One Bank*, 792 F.3d at 1366 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet.").

The dependent claims similarly fail to include any inventive concept beyond the abstract idea encompassed in the independent claims.  *Semantic Search Techs. LLC v. Aldo U.S., Inc.*, 425 F. Supp. 3d 758, 774 (E.D. Tex. 2019) (dependent claims which do not "introduce any substantially different allegations for limitations or inventive concepts" are still  directed to the abstract idea of the independent claim).  Several dependent claims simply recite determining or defining more relationships in the same data structure in claim 1, including claims 2, 3, 4, 8, 12, 15, 16, 19, and 20.  For example, the "acyclic"  descriptor paths recited in claims 3, 8, 12, 15, 19 simply mean that within the multi-level hierarchy, "all paths end[] at an object."  '928 patent at 5:1-14, 5:50-54. This is akin to applying successive related attributes of a book to filter through a book catalog until a specific copy of a book is identified (*e.g.*, paper (recording medium) → hardcover (format) → horror (genre) → Stephen King (author) → telekinesis (subject matter) → *Carrie*).  Likewise, claims 4 and 16 are drawn to "determining the relationships" between different descriptors relative to themselves and the initial data object, which is akin to determining that Stephen King is related to the horror genre and that the book *Carrie* should be classified as (*i.e.*, associated with) Stephen King and horror.  Furthermore, claim 2's relating of each descriptor to one or more predecessor descriptors to form a hierarchical relationship is akin to relating Stephen King to the horror genre in the example of the book catalog given above.  Finally, once again, limiting the multi-level

hierarchy directory to a particular technological context, here a social network (claim 20), cannot impart patent eligibility. *See Capital One Bank,* 792 F.3d at 1366.

Several other dependent claims, including claims 5, 7, 10, 11, 14, and 18, are drawn to generic computer hardware that cannot impart an inventive concept. For example, applying a graphical user interface to the enmeshed data structure as in claims 5, 7, 10, 14, 18—*e.g.*, using Windows, Mac OS, or Linux to navigate a file system—is well-known, routine, and conventional. *cxLoyalty, Inc. v. Maritz Holdings Inc*., 986 F.3d 1367, 1377 (Fed. Cir. 2021) ("[T]he communication of information by GUIs and APIs was well-known in the prior art.") (internal citations omitted). Second, the radio node, router, and gateway in claim 11 are also well-known, generic computer components that do not constitute an inventive concept. *See Intell. Ventures I LLC v. AT & T Mobility LLC*, 235 F. Supp. 3d 577, 591 (D. Del. 2016) (finding that the claimed "CCSN/IG is made of conventional components," including a "gateway [that] may be a 'common gateway interface'"); *FatPipe Networks India Ltd. v. XRoads Networks Inc.*, No. 2:09-CV-186-DN, 2015 WL 12778762, at *3 (D. Utah Sept. 22, 2015) (describing routers being part of "traditional network design" or "conventional network topology"); U.S. Patent No. 8,140,011 (patent describing "radio node apparatus" and claiming priority date of August 6, 2004). Accordingly, the dependent claims of the '928 patent are also directed to non-patent-eligible subject matter.

## II.     WSOU'S INDIRECT INFRINGEMENT ALLEGATIONS SHOULD BE DISMISSED

### A.     WSOU Cannot Plead Pre-Suit Knowledge

Both induced and contributory infringement "require[] knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011) (indirect

infringement requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement.").  With respect to the knowledge requirement, this Court has repeatedly held that failure to plead any facts supporting an allegation of pre-suit knowledge of the asserted patent should result in the dismissal of a plaintiff's indirect infringement claims.  *See Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020); *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-00432-ADA, Text Order Granting D.I. 54 (W.D. Tex. Feb. 4, 2020) (dismissing indirect infringement claims where plaintiff's only allegation of knowledge was that "Defendant Apple has had knowledge of the '431 Patent since at least the filing of the original complaint" and "[b]y the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement" (D.I. 28 (Am. Compl.) at ¶ 44)); *VLSI Tech., LLC v. Intel Corp.,* No. 6:19-cv-00254-ADA, 2019 WL 11025759, *1-2 (W.D. Tex. Aug. 6, 2019) (dismissing indirect infringement claims with no allegation of actual knowledge and insufficient facts to support allegations of willful blindness).

Like the complaints in the *Castlemorton*, *Parus Holdings*, and *VLSI* cases, the Complaint in this case fails to allege any facts for the Court to reasonably infer that Salesforce had pre-suit knowledge of the '928 patent.  Indeed, the Complaint only alleges that "Salesforce has received notice and actual or constructive knowledge of the '928 patent since at least the date of service of this Complaint" (Dkt. 1, ¶ 25), and thus does not establish that Salesforce had any pre-suit knowledge of the '928 patent.  Accordingly, the Court should dismiss WSOU's indirect infringement claims.

**B.**     **WSOU Cannot Plead The Requisite Specific Intent For Induced Infringement**

WSOU also fails to plead specific intent in support of its inducement claim.  Allegations of specific intent require factual "'evidence of culpable conduct, directed to encouraging another's infringement, *not merely that the inducer had knowledge of the direct infringer's activities*.'"  *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *3 (E.D. Tex. June 28, 2016) quoting *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added); *see also Promotional Techs., LLC v. Facebook, Inc.*, No. 3:11-CV-3488-P, 2012 WL 13026789, at *5 (N.D. Tex. Sept. 27, 2012) (dismissing inducement claims where plaintiff's "Original Complaint does not contain any allegations of the Defendants' specific intent to induce or active steps to encourage another's infringement" because "[a] patentee must provide factual allegations in support of the elements of inducement that have some evidentiary support.").

WSOU's allegations of specific intent amount to a conclusory statement that Defendant "actively induced" others to infringe through its advertising and promotional materials and some website citations:

> 26. Since at least the date of service of this Complaint, through its actions, Salesforce has ***actively induced*** product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '928 patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:
>
> - https://www.salesforce.com/products/sales-cloud/features/
> - https://www.salesforce.com/products/sales-cloud/features/contact-management-software/
> - https://help.salesforce.com/articleView?id=contacts_hierarchy_lex.htm&type=5
> - https://www.youtube.com/watch?v=fmiUtHXMQKg
> - http://pages.mail.salesforce.com/gettingstarted/sales-cloud/set-up-accounts-and-contacts/
> - https://www.salesforce.com/crm/
> - http://www.infallibletechie.com/2016/09/contact-hierarchy-in-salesforce.html
> - https://help.salesforce.com/articleView?id=contacts_fields.htm&type=5

*See* Dkt. 1, ¶ 26 (emphasis added).   These conclusory allegations fail to present any facts demonstrating:   (1) Salesforce knew that the alleged acts infringed, and (2) Salesforce knew that the promotion of its products would induce or encourage others to infringe the asserted patent.   *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement.").

In *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, this Court found that "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are . . . insufficient" for an induced infringement claim (*see* No. W:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014)) where Plaintiffs alleged that "Toyota and/or its distributors or representatives have sold or otherwise provided Toyota automobiles with sound systems—including at least, for example, the Toyota Tundra—to third parties, such as Toyota's customers" (*see id.,* Dkt. 1, ¶¶ 36, 47 (Nov. 21, 2013)).   Similarly, here, WSOU's allegations listing the marketing and promotional websites for the accused product are similarly insufficient to show that Salesforce had specific intent to induce its customers to infringe. *See MONEC Holding AG v. Motorola Mobility, Inc*., 897 F. Supp. 2d 225, 234 (D. Del. 2012) ("Allegations of the marketing activities of the Defendants do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement."); *see also Affinity Labs of Texas, LLC v. Blackberry Ltd*., No. W:13-CV-362, 2014 WL 12551207, at *6 (W.D. Tex. Apr. 30, 2014) (dismissing induced infringement allegations where "Plaintiff does not specify how the marketing and selling activities of [Defendant] actually induced third-parties to infringe the [asserted patent]."); *Core Wireless*

*Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at *4 (E.D. Tex. June 3, 2015), report and recommendation adopted, No. 6:14-CV-751-JRG-JDL, 2015 WL 13885437 (E.D. Tex. July 15, 2015) ("[G]eneric allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim."); *compare with Achates Reference Pub., Inc. v. Symantec Corp.*, 2:11-CV-294-JRG-RSP, 2013 WL 693955, at *3 (E.D. Tex. Jan. 10, 2013) report and recommendation adopted, 2:11-CV-294-JRG-RSP, 2013 WL 693885 (E.D. Tex. Feb. 26, 2013) (noting that since the defendant's software required its customers to complete a mandatory activation step to use its products, thereby utilizing plaintiff's patent, the court could reasonable infer induced infringement since the plaintiff included allegations beyond the mere purchase and usage of a product by a third person).

Moreover, Plaintiff's allegations also fail to provide any specific allegations mapping the advertisement or promotion to the performance of the claimed steps of the patent—*i.e.*, "evidence of culpable conduct, directed to encouraging another's infringement." *Ruby Sands*, 2016 WL 3542430, at *3. WSOU's inducement claim should also be dismissed on this separate basis, as the Complaint is entirely deficient on this critical requirement of induced infringement.

### C.     WSOU Cannot Plead The Requisite Lack Of Substantial Non-Infringing Uses For Contributory Infringement

WSOU's contributory infringement allegations also fail because WSOU did not "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *2 (W.D. Tex. Dec. 10, 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1344–46 (Fed. Cir. 2012)). WSOU has not done so and cannot do so.

WSOU's allegations amount to little more than a conclusory statement that repeats the legal elements. For the instant action, WSOU alleges that:

> 27. Since at least the date of service of this Complaint, through its actions, Salesforce has contributed to the infringement of the '928 patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '928 patent. The Accused Products are especially made or adapted for infringing the '928 patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '928 patent.

*See* Dkt. 1, ¶ 27. As the Federal Circuit held in *Artrip v. Ball Corp*, conclusory allegations such as these are not enough. 735 F. App'x 708, 713 (Fed. Cir. 2018) (affirming dismissal of a contributory infringement claim where the "complaint did not plausibly assert facts to suggest that [Defendant] was aware of the patents or facts to suggest that the [Accused Product] it supplied had no substantial noninfringing use"). WSOU's failure to raise a plausible inference of no substantial noninfringing uses and materiality is fatal to its contributory infringement claim, and as such it should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Salesforce respectfully requests that the Court dismiss WSOU's complaint. Pursuant to L.R. CV-7(h), Salesforce requests an oral hearing on the foregoing motion.

DATED: May 6, 2021                    Respectfully submitted,


By _____ */s/ Kevin P.B. Johnson* _____
   Scott L. Cole
   scottcole@quinnemanuel.com
   Quinn Emanuel Urquhart & Sullivan, LLP
   201 West 5th Street
   11th Floor
   Austin, TX 78701
   Telephone: (737) 667-6104

   Kevin P.B. Johnson
   kevinjohnson@quinnemanuel.com
   Todd Briggs
   toddbriggs@quinnemanuel.com
   Quinn Emanuel Urquhart & Sullivan, LLP
   555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
   Telephone: (650) 801-5000
   Facsimile: (650) 801-5100

   Sam Stake
   samstake@quinnemanuel.com
   Quinn Emanuel Urquhart & Sullivan, LLP
   50 California Street, Floor 22,
   San Francisco CA 94111
   Telephone: (415) 875-6600
   Facsimile: (415) 875-6700

   *Attorneys for Defendant salesforce.com, inc.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify

that, on May 6, 2021, all counsel of record who have appeared in this case are being served with

a copy of the foregoing via the Court's CM/ECF system.

Dated:  May 6, 2021                        */s/ Scott L. Cole*
                                            Scott L. Cole