# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SALESFORCE.COM, INC.<br><br>　　　　Defendant. | Civil Action No.:  6:20-cv-1165-ADA<br><br>**JURY TRIAL DEMANDED** |

# REPLY IN SUPPORT OF DEFENDANT SALESFORCE'S
# RULE 12(b)(6) MOTION TO DISMISS

## **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | WSOU FAILS TO REBUT THAT THE '928 PATENT IS NOT PATENT ELIGIBLE............................................................................................................1 | |
| | A. Claim Construction Is Unnecessary To Find The Asserted Claims Invalid ....................... 1 | |
| | B. *Alice* Step 1: Claim 1 Is Directed To An Abstract Idea ....................................................... 3 | |
| | C. *Alice* Step 2: The '928 Patent Recites Only Generic Steps And Components .................. 5 | |
| | D. The Remaining Asserted Claims Are Also Patent Ineligible............................................. 7 | |
| II. | WSOU'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED...............8 | |
| | A. WSOU Failed To Plead the Required Pre-Suit Knowledge ................................................ 8 | |
| | B. WSOU Failed To Plead Specific Intent................................................................................ 9 | |
| | C. WSOU Failed To Plead Substantial Non-Infringing Use .................................................. 10 | |

**I.      WSOU FAILS TO REBUT THAT THE '928 PATENT IS NOT PATENT ELIGIBLE**

**A.      Claim Construction Is Unnecessary To Find The Asserted Claims Invalid**

Contrary to the assertions in WSOU's Response, the Federal Circuit has repeatedly affirmed that patent eligibility may be decided at the pleading stage and/or without claim construction when the patentee fails to (i) propose the construction of any claim terms and (ii) explain how the proposed construction could affect the §101 analysis – as WSOU has failed to do here. *See Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (holding that resolution of patent eligibility prior to claim construction at the pleading stage is proper where patentee has not "identified a single claim term that it believes requires construction before [] eligibility [] can be decided, much less how [] construction could affect the analysis."); *Cleveland Clinic Found. v. True Health Diagnostics* LLC, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *accord Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021); *see also* Mot. at 9-10 & n.1.[1]  Accordingly, WSOU's argument that requiring such a showing of a party that seeks resolution of a §101 motion at the pleading stage amounts to an improper "burden-shifting" (Resp. at 4-5) is thus contrary to binding Federal Circuit precedent (and not simply "non-precedential authority" as WSOU mistakenly contends (Resp. at 4)).

Instead of affirmatively identifying any terms that, in its view, require construction, WSOU seeks to deflect the Court's attention by criticizing Salesforce for correctly pointing out that nothing on the face of claim 1 recites "a computer-implemented technology." *See* Resp. at 5.

---

[1] WSOU notably fails to address a single one of the Federal Circuit cases cited in Salesforce's Motion, including *Cyberphone*, or to distinguish any of the other cases cited by Salesforce other than this "non-prencendential" claim.  Moreover, the *MyMail* and *Bancorp* cases on which WSOU relies are in fact consistent with this principle: in those cases, the Federal Circuit found that the patentees had identified specific terms requiring construction and explained how the proposed constructions could affect the §101 analysis.  *See MyMail Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379-80 (Fed. Cir. 2019); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).

1

However, WSOU then notably ignores the very next sentence in Salesforce's brief, which states that "***even confining claim 1 to a computer implemented context***, updating a database is well-known, routine, and conventional activity." Mot. at 8.  Thus, WSOU's further assertion (Resp. at 5) that Salesforce allegedly proposed an affirmative claim construction that the term "database" in the claims needs to be broad enough to cover pen and paper databases is flatly incorrect.  WSOU's reference to "acyclic" as used in dependent claims 3, 8, 12, 15, 19 (*see id*.) likewise fails, as WSOU never claims that this term in fact needs to be construed, much less that its construction would have any bearing on the 101 analysis. [2]

Indeed, as set forth in Salesforce's motion, "there is no construction which WSOU can propose that would let it avoid the outcome that the '928 patent is directed to ineligible subject matter," as the terms used in the claims of the '928 patent recite non-inventive combination of well-known and/or generic technological elements.  *See* Mot. at 9-12.  WSOU nowhere rebuts this contention—failing to identify even a single term in need of construction—but in the end resorts to naked attorney argument mischaracterizing Salesforce's arguments as "conclusory" or "undefended."  *See* Resp. at 5.

In light of WSOU's failure to identify any terms that in fact would need construction and explain how this bears on the 101 analysis, this Court's stated reason for waiting to determine §101 eligibility until after claim construction in the *Slyce* case—*i.e.*, efficiency—actually favors the Court deciding the '928 patent's §101 eligibility before claim construction.  *See Morales v. Square,*

---

[2] WSOU also points to a laundry list of generic computer elements in various dependent claims, such as "network management system" and "computer implemented storage system" (Resp. at 5).  However, again WSOU never says that these terms need to be construed or that their construction would bear on the Section 101 determination.  Moreover, these terms were in fact explicitly addressed by Salesforce, as WSOU ignores (*see* Mot. at 10) (demonstrating how these are nothing more than "generic hardware elements," which WSOU does not dispute – further supporting the invalidity of these claims under Section 101).

2

*Inc.*, 75 F. Supp. 3d 716, 721-22 (W.D. Tex. 2014), *aff'd* 621 F. App'x 660 (Fed. Cir. 2015) ("Given the absence of [any] dispute [requiring resolution] and the 'salutary effects' of addressing § 101 at the outset of litigation, the Court finds that neither separate claim construction proceedings nor further development of the factual record is required before addressing the § 101 issue.")[3]

### B.   *Alice* Step 1:  Claim 1 Is Directed To An Abstract Idea

WSOU's claim that Salesforce's identification of the abstract idea of claim 1 as "generating a multi-level hierarchy" somehow "overgeneralizes" the subject matter of claim 1 is incorrect. First, to the extent that WSOU implies that the abstract idea must recite each and every limitation of the claim under consideration (Resp. at 7-8), that is not the appropriate test: "[t]he 'abstract idea' step of the inquiry … look[s] at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter," *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

The abstract idea of generating a multi-level hierarchy to which the claims are directed in fact accounts for the claims' character as a whole, as outlined in Salesforce's motion.  Mot. at 4-6.  WSOU's primary argument in support of its "overgeneralization claim" is that the preamble of claim 1 further recites "directory structure and establishing relationships between descriptors." *See* Resp at 7.  However, these elements are expressly encompassed with the abstract idea, and as WSOU ignores, are directly addressed in Salesforce's motion. *See, e.g.*, Mot. at 4-6 ("Claim 1 recites steps for generating a 'multi-level hierarchical directory structure,' all of which can easily be performed by a human with pen and paper, which is a hallmark of an abstract idea.").

More particularly, as recited in the specification passage on which WSOU relies, the '928

---

[3]   To the extent that WSOU implies that Salesforce's motion is premature merely because fact discovery has not yet begun (i) this ignores the substantial number of cases granting such Section 101 motions at the pleading stage, and (ii) WSOU makes no argument or showing as to what hypothetical discovery it would need that would bear on the issues raised by the pending Motion.

patent describes two prior art directory structures—(i) a "simple directory structure" where an object is associated with a single descriptor and each descriptor is associated with a higher level descriptor and (ii) a "flat-tag structure" where an object can be associated with multiple descriptors but each descriptor is not associated with another descriptor. *See* '928 patent at 1:28-54. The alleged invention discloses an "enmeshed directory structure" where an object can be associated with multiple descriptors and each descriptor is associated with one or more descriptors at different levels. *See id.* at 4:57-5:20. Thus, each of the claimed elements to which WSOU points (Resp. at 7) (including the "generating a multilevel hierarchical directory structure," "forming multi-level relational tree," "determining the relationship [of] descriptors, …," "creating a hierarchical structure …" and "establishing relationships …") is a step in generating a multi-level hierarchy as recited in the specification—demonstrating that the claim as a whole focuses on generating a multi-level hierarchy as the claimed advance. But this is just an abstract idea, as reflected in *Versata*—a case which WSOU never addresses.[4]

      WSOU also argues that claim 1 is not abstract because it is directed to "*technical improvements* in computing capabilities"—specifically an "*interlinking* directory structure," and thus analogous to patent claims that the Federal Circuit found to be not abstract. Resp. at 8-10. But this argument fails. Leaving aside that the claim language cited by WSOU to describe this "interlinking directory structure" reveals that it is merely "a hierarchical structure" consisting of "different levels of descriptors," where a descriptor on a specific level can be linked to descriptors on other levels (*see* '928 patent at 10:51-58), WSOU fails to cite any part of the '928 patent or the Complaint that explains ***how*** this "interlinking directory structure" improves computer functionality. This failure distinguishes the cases cited by WSOU, where the Federal Circuit found

---

[4] Even if the specific claimed elements recited in claim 1 supported the claim's novelty—they do not—"a claim for a new abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

4

that the claims at issue were not directed to abstract ideas because they recited **specific** improvements in computer functionality such as "a self-referential table" enabling "faster searching of data" and "more effective storage of data" (*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1333 (Fed. Cir. 2016)), "an enhanced computer memory system" that "offers faster access to main memory and increases system performance" (*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1256, 1259 (Fed. Cir. 2017)), and "improv[ed] security" that reduces "vulnerability of license-authorization software to hacking" (*Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018)).  Nor does WSOU's attempt to distinguish *Morinville* rebut Salesforce's showing that claim 1 and the patent-ineligible claim of *Morinville* are very similar and that both directed to abstract ideas because they can both be performed by hand—merely implementing such an abstract idea on a computer does not render it subject matter eligible.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d at 1151; *Symantec*, 838 F.3d at 1318.

        **C.**     *Alice* **Step 2:  The '928 Patent Recites Only Generic Steps And Components**

WSOU first attempts to manufacture an issue of fact by again relying on its misreading of Salesforce's brief, this time asserting that Salesforce's statements in the context of the Alice step 1 analysis (*e.g.*, claim 1 on its face does not recite any "computer-implemented technology") raises "issues of fact."  *See* Resp at 11.   As addressed in Section I.A., *supra*, Salesforce's motion directly addresses the claims in the Alice step 1 and 2 analysis considering any possible computer-implemented context.  *See, e.g.*, Mot. at 8, 10 (reference to "generic hardware elements"), 11 (reference to "field of use").  Moreover, neither of these two allegedly disputed issues of fact is relevant to determining whether claim 1 satisfies step two of the *Alice* test, *i.e.*, whether the elements of claim 1 individually or in combination involve more than the performance of well understood, routine, and conventional activities.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Relying on *eCeipt LLC v. Homegoods*, WSOU next argues that claim 1 is directed to an "inventive concept" because it recites a "limited and specific solution to technology-related problem in the computing arts." However, WSOU provides no evidence to support this assertion. For example, WSOU cites to parts of the '928 patent describing alleged deficiencies in prior art directory structures, including how they have limited flexibility in describing or comparing objects stored within them (*see* Resp. at 11), but fails to cite any part of the '928 patent or the Complaint discussing how the alleged invention as reflected in the claims addresses these alleged deficiencies. Thus, this case is distinguishable from the *eCeipt* case, where the plaintiff affirmatively demonstrated that each claim of the asserted patent "contain[ed] an inventive concept." No. W-19-CV-00032-ADA, 2019 WL 10302271, at *6-7 (W.D. Tex. May 20, 2019).

WSOU also asserts—without citing any evidence or legal authority—that "when considered both individually and as an ordered combination, the limitations of claim 1 clearly recite inventive concepts" that render claim 1 patent eligible. Resp. at 12. Not only is this argument conclusory, but it also fails on its merits. Specifically, all but at most one of the elements of claim 1 on which WSOU relies—"updating a corresponding database"—are the same steps that make up the abstract idea of generating a multi-level hierarchy. But, as a matter of law, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (cited in Mot. at 8). And, to the extent "updating a corresponding database" is not already part of that same abstract idea, it is only a well understood, routine, and conventional activity that cannot render claim 1 patent eligible. *See* Mot. at 8. WSOU's opposition fails to address, let alone rebut, this argument.

D.     **The Remaining Asserted Claims[5] Are Also Patent Ineligible**

WSOU's arguments regarding the other claims also fail. To begin, WSOU merely repeats the arguments it makes with respect to claim 1 (*see* Resp. at 12-13), which fail as explained above.

WSOU next mischaracterizes Salesforce's assertion that "independent claims 6, 9, 13, and 17 are all directed to the same multi-level directory structure" as "suggesting … that claims 2-20 are directed to a *different* abstract idea" from the abstract idea that claim 1 is directed to (*i.e.*, "generating a multi-level hierarchy"). *See id.* But this is a specious argument since, as the '928 patent itself teaches, a "directory structure" is a type of hierarchy. *See* '928 patent at 1:30-37. Moreover, the only other asserted independent claim, claim 13, recites only a subset of the elements of claim 1, such that there can be nothing significantly more to this claim that would render it patent eligible.

With respect to asserted dependent claims 2-4 and 15-16, WSOU nowhere disputes Salesforce's showing that they each recite determining or defining more relationships within the same data structures; nor does WSOU dispute that these added limitations, being a part of the ineligible abstract idea, cannot supply the inventive concept to render the claim patent eligible. *See* Mot. at 10; *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

Instead, WSOU emphasizes generic computer components recited in claim 13. *See* Resp. at 13 ("computer readable storage medium").[6] But such generic components cannot constitute an inventive concept. *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1377 (Fed. Cir. 2021).

---

[5]  In its initial infringement contentions, WSOU has asserted infringement of claims 1-5 and 13-16 by Salesforce. Thus, the Court has subject matter jurisdiction to determine whether these claims are directed to patent-eligible subject matter under 35 U.S.C. § 101. *See Ameranth, Inc. v. Domino's Pizza LLC*, 792 F. App'x 780, 783-84 (Fed. Cir. 2019).

[6]  WSOU fails to rebut Salesforce's showing that the dependent limitations of claims 5 and 14 are also drawn to generic computer components. Mot. at 12.

## II.    WSOU'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A.    WSOU Failed To Plead the Required Pre-Suit Knowledge

WSOU does not contest that it failed to plead pre-suit knowledge.  Resp. 14.  This Court has *routinely* held that allegations of indirect infringement require pre-suit knowledge.  *See, e.g., Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, Dkt. 54 (W.D. Tex. Feb. 20, 2020); *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-207, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019); *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-cv-00029, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020).  The onus is on WSOU to explain why the Court should deviate from its standard practice of dismissing these claims.  *WSOU Invs., LLC v. Dell Techs., Inc.*, No. 6:20-cv-478, Dkt. 73 at 76:1-11 (W.D. Tex. Dec. 22, 2020).  WSOU's case law discussion for other districts (*see* Resp. 14-15) is irrelevant, since the rulings of this Court are clear:  pre-suit knowledge is required for indirect infringement.

WSOU's reliance on *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed. Cir. 2012) for the proposition that a party may seek to pursue claims that accrue during the pendency of a lawsuit is misplaced.  **First,** this Court has already rejected precisely this same argument made earlier by WSOU.  See *WSOU Invs., LLC v. Dell Techs., Inc.*, No. 6:20-cv-478, Dkt. 55 at 3, 5-6, 8, Dkt. 73 at 76:14-77:7.  **Second,** *Aspex Eyewear* addressed the scope of res judicata, and has nothing to do with the question of whether the filing of a complaint can create a cause of action.  672 F.3d at 1345.  **Third**, other Federal Circuit decisions confirm that allegations of pre-suit knowledge are, in fact, required in order to allege indirect infringement.  *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018); *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1380 (Fed. Cir. 2013).  Thus, this Court's precedent is fully consistent with Federal Circuit precedent and with the knowledge requirement

itself.[7]

## B. WSOU Failed To Plead Specific Intent

WSOU's inducement allegations are similar to the dismissed allegations in *Affinity Labs of Texas, LLC v. Toyota Motor N. Am.*, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014). There, Plaintiffs alleged that "Toyota and/or its distributors or representatives have sold or otherwise provided Toyota automobiles with sound systems—including at least, for example, the Toyota Tundra—to third parties, such as Toyota's customers." No. W:13-CV-365, Dkt. 1, ¶¶ 36, 47 (Nov. 21, 2013) *cf.* Compl. ¶ 26.

WSOU's cited cases are distinguishable. In *Maxell Ltd. v. Apple, Inc.*, the Court explicitly stated that "reference to instructions without allegations of which functionalities are at issue or facts identifying how those instructions direct customers to use the products in an infringing manner is insufficient" and that "generic statements regarding the provisions of instructions are insufficient." 5:19-CV-00036-RWS, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019). WSOU's allegations are precisely the kind of "general statements" which *Maxell* indicated are insufficient, unlike the specific allegations of directions upheld in that case. In *Nalco Co. v. Chem-Mod, LLC*, the Federal Circuit confirmed that the plaintiff met the pleading standard by pleading detailed allegations of specific and concrete actions taken by defendants to induce third parties. 883 F.3d 1337, 1356 (Fed. Cir. 2018); *see also* Case No. 1:14-cv-2510, Dkt. 108, ¶ 57 (N.D. Ill. Nov. 16, 2015). WSOU's allegations are generic compared to those in

---

[7] Other courts that have considered Federal Circuit precedent on this issue have likewise concluded that the Federal Circuit has never allowed indirect infringement allegations on post-suit knowledge. *See Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012).

9

*Nalco*.[8]

### C. WSOU Failed To Plead Substantial Non-Infringing Use

WSOU's complaint does not plausibly suggest that the Accused Products "could not be used 'for purposes *other than* infringement.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (citations omitted). In *Synopsys, Inc. v. ATopTech, Inc.*, the court dismissed claims of contributory infringement, finding "Plaintiff has failed to raise the reasonable inference that Defendant's software has no substantial non-infringing uses." No. C 13-CV-02965 SC, 2013 WL 5770542, at *16 (N.D. Cal. Oct. 24, 2013).[9] The Court should reach the same outcome here, where WSOU's complaint omits any similar allegation of specific design for infringing use and fails to satisfy this threshold for pleading contributory infringement. *See* Compl. ¶ 27.

---

[8] WSOU's other cases are likewise inapposite. In *Script Security Solutions LLC v. Amazon.com, Inc.*, the plaintiffs alleged intent by pleading "that the defendants arranged to remain willfully blind to Script's patents by adopting a policy of not reviewing the patents of others." 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016); *see also Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-cv-546, 2020 WL 1478356, at *5-6 (E.D. Tex. Mar. 25, 2020) (relying on allegations that defendant took "active steps to encourage and facilitate" particular groups of direct infringers); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 825-26 (E.D. Tex. 2019) (emphasizing allegations that the defendant entered "into contractual relationships with others," and recognizing that the "normal and customary use of the accused products" would infringe (emphasis omitted)); *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP VBKX, 2015 WL 1525537, at *3 (C.D. Cal. Apr. 3, 2015) (finding sufficient allegations of "active steps" such as "provid[ing] instructions to end-users on how to obtain internet access and that Defendant trains hotel employees to assist guests to obtain network access" along with "allegations that obtaining such internet access requires the infringing use of the patented systems as a whole."); *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 395 (D. Del. 2013) (finding sufficient a complaint which "contains factual allegations, not mere legal elements, showing an intent to induce infringement"); *U.S. Water Servs., Inc. v. Novozymes A/S*, 25 F. Supp. 3d 1088, 1094 (W.D. Wis. 2014) (sufficient to "allege that defendants knew of plaintiffs' technology and patents and that they instructed potential customers to buy their product and use it in the same way as plaintiffs' patented methods").

[9] *Motiva Patents* does not compel a different outcome. *See* 408 F. Supp. 3d at 835 (finding sufficient allegation, absent here, that the accused products had "special features [related to motion sensors] that [were] specifically designed to be used in an infringing way" and could not be used in any other manner).

Dated:  July 19, 2021       /s/ Scott L Cole
Scott L. Cole
scottcole@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
201 West 5th Street
11th Floor
Austin, TX 78701
Telephone: (737) 667-6104

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com
Todd Briggs
toddbriggs@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Sam Stake
samstake@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, Floor 22,
San Francisco CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Counsel for Defendant salesforce.com, inc.*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 19, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: July 19, 2021              */s/ Scott L. Cole*
                                                              Scott L. Cole