UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC,** | § § | **CIVIL NOS.** |
| Plaintiff, | § § | W-20-CV-01163-ADA-DTG |
| | § | W-20-CV-01164-ADA-DTG |
| v. | § | W-20-CV-01165-ADA-DTG |
| | § | W-20-CV-01166-ADA-DTG |
| **SALESFORCE.COM, INC.,** | § | W-20-CV-01167-ADA-DTG |
| | § | W-20-CV-01168-ADA-DTG |
| Defendant. | § | W-20-CV-01169-ADA-DTG |
| | § | W-20-CV-01170-ADA-DTG |
| | § | W-20-CV-01171-ADA-DTG |
| | § | W-20-CV-01172-ADA-DTG |
| | § | |

## ORDERS ON DISCOVERY DISPUTES

Before the Court are two discovery disputes that Plaintiff submitted to the Court pursuant to the procedures laid out in Section IV of the Standing Order Governing Proceedings in Patent Cases.

| Brazos's [Requesting Party] Position | Salesforce's [Responding Party] Position |
|---|---|
| **ISSUE NO. 1** | **ISSUE NO. 1** |
| | |
| **Relief Requested**: The Court should compel Daniel Reed, Salesforce's supplemental 30(b)(6) witness regarding the negotiation and execution of the License Agreement entered into between Salesforce and Uniloc, to sit for a supplemental seven-hour deposition. At his deposition on February 15, 2023, Mr. Reed testified as to privileged conversations with Ray Zado, Salesforce's counsel, concerning the License Agreement, thereby waiving privilege. But Mr. Zado, who defended the deposition, improperly instructed Mr. Reed not to answer certain other questions on the same topic on the purported basis of attorney-client privilege, which had already been waived. | **Relief Requested**: The Court should deny WSOU's request to compel a second deposition of Daniel Reed, Salesforce's in-house counsel. WSOU fails to identify *any* privileged advice that Mr. Reed disclosed or relied upon, and accordingly there is no waiver. Indeed, the Court already ruled during Mr. Reed's deposition that WSOU's primary cite alleging waiver was not privileged. WSOU's motion has no merit and is an improper attempt to invade the attorney-client privilege. |
| | **Summary:** |
| **Summary**: | |
| | A party does not waive attorney-client protections simply because it shares ***factual, non-privileged*** information relayed from an attorney. WSOU's own case explains this basic |
| Mr. Reed testified that attorneys for Uniloc and | legal principle. In *In re Itron, Inc.* the Fifth |

| Brazos's [Requesting Party] Position | Salesforce's [Responding Party] Position |
|---|---|
| Salesforce had conversations regarding Salesforce's position that the License Agreement needed to involve "global patent peace" between Salesforce and Uniloc.  (Ex. 1, Reed Tr. at 67:9-25.)  However, Mr. Reed testified that he was not a participant on the calls between counsel, and that he was relying solely on statements from his counsel, Ray Zado, regarding the matters discussed on those calls. (Ex. 1 at 69:12-70:13; *see also* 68:2-12, 78:3-79:7, 85:5-24, 114:4-115:6, 120:7-122:17, 147:17-149:8.)  Mr. Zado also represents Salesforce in these matters, and Mr. Zado defended Mr. Reed at this deposition.<br><br>Salesforce waived privilege in Mr. Reed's deposition by "affirmatively relying on attorney-client communications to support an element of a legal claim or defense – thereby putting those communications at issue in the case." *In re Itron Incoporated,* 883 F.3d 553, 555 (5th Cir. 2018).<br><br>First, Salesforce waived privilege when Mr. Reed testified as to the alleged contents of attorney-client communications in support of Salesforce's license defense.  For example, Mr. Reed testified that he was relying on attorney-client communications with Mr. Zado for his claim that Mr. Etchegoyen was bound personally by the License Agreement.  (Ex. 1 at 69:12-70:13); *see Kunze v. Scott*, No. 3:20-CV-01276-N, 2021 WL 4907064, at *1 (N.D. Tex. Oct. 21, 2021).<br><br>Second, Salesforce waived privilege when Mr. Reed testified selectively as to privileged information depending on whether the communications would bolster Salesforce's defense.  *See eTool Devs., Inc. v. Nat'l Semiconductor Corp*., No. 2:08-CV-196-DF, 2011 WL 13217656, at *1 (E.D. Tex. Nov. 29, 2011) (party cannot selectively disclose only certain privileged information that it considered helpful to its position during depositions).<br><br>For example, although Mr. Reed generally refused to answer factual questions concerning the License Agreement, he was willing to say that he believed Mr. Etchegoyen was personally bound by the | Circuit held that "for [implied] waiver to occur, the client must ***rely*** on ***privileged advice from his counsel*** to make his claim or defense.'" 883 F.3d 553, 561 (5th Cir. 2018).<br><br>WSOU also ignores that an attorney's communication of ***facts*** to a client, as opposed to legal advice, is not privileged.  *See La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *7 (W.D. Tex. May 25, 2022) ("Facts within the client's knowledge are not protected by the attorney-client privilege, even if the client learned those facts through communications with counsel. As these communications ***relayed facts, not legal advice***, they are not privileged.").<br><br>WSOU fails to identify ***any*** "privileged advice from his counsel" that Mr. Reed revealed or relied upon during his deposition – let alone any "selective" testimony as WSOU claims.  WSOU instead points to Mr. Reed's identification of several ***non-privileged facts***, including facts communicated to him by Mr. Zado, supporting his understanding that Mr. Etchegoyen is personally bound by the license agreement, including (i) Mr. Etchegoyen signed the agreement; (ii) counsel for the parties discussed achieving "global patent peace" during license negotiations; and (iii) counsel for the parties discussed protecting Salesforce against circumstances where Mr. Etchegoyen might "form another entity, obtain patents and assert those against Salesforce."  WSOU Ex. 1 at 67:3-25.[1]<br><br>In WSOU's primary cite alleging waiver, Mr. Reed testified as to nothing more than non-privileged facts related to Mr. Etchegoyen's inclusion in the agreement's terms, including "the agreement itself, the language in the agreement, and… the course of the negotiations and the discussions between counsel," which all either reference or evidence Mr. Etchegoyen being bound by the agreement.  *Id.* at 128:15-129:16.  Indeed, this is no more privileged than the question that Judge Gilliland instructed Mr. |

---

[1]   These facts are also consistent with contemporaneous emails recording the parties' discussions of "full patent peace."  *See, e.g.,* WSOU Ex. 6 (Reed Dep. Ex. 8) at 1, 3.

| Brazos's [Requesting Party] Position | Salesforce's [Responding Party] Position |
|---|---|
| agreement. (Ex. 1 at 128:15-25.) This question is indistinguishable from others that Mr. Reed refused to answer based on attorney-client privilege. (*See e.g.*, Ex. 1 at 61:14-17, 62:6-10, 144:24-145:2, 147:3-9.) And Salesforce has already relied on these attorney-client communications to support its license defense, having one of its experts rely on Mr. Reed's testimony in support of its license defense. (Ex. 2 (David Kennedy Expert Report) at ¶33 (citing to Mr. Reed's testimony for the proposition that Mr. Etchegoyen is bound by the License Agreement).) | Reed to answer relating to whether it was Mr. Reed's belief, at the time of execution, as to whether Mr. Etchegoyen was bound by the agreement. *Id.* at 139:5-11; 141:3-142:15. |
| | The fact that Mr. Etchegoyen signed the agreement is not privileged. Likewise, the agreement itself, and discussions between counsel during the negotiation of the agreement, are not privileged. And, the fact that some of these facts were relayed by Salesforce's counsel to Mr. Reed is not privileged. *La Union Del Pueblo Entero*, 2022 WL 1667687, at *7. WSOU's argument that this testimony waived privilege is particularly unfounded here—during Mr. Reed's deposition, the Court ruled during a teleconference that these same facts are not privileged. |
| The parties exchanged correspondence (see Ex. 3 (2/24/2023 letter), and Ex. 4 (3/6/2023 letter) and met and conferred on March 10, but Salesforce refused to make Mr. Reed available for a second deposition. | |
| **ISSUE NO. 2** | In contrast, Mr. Reed followed proper instructions on other questions not to reveal privileged advice and litigation work product. For example, Mr. Reed was asked for his opinion on the proper interpretation of a parenthetical phrase in the agreement's definition of "Uniloc" (WSOU Ex. 1, 61:14-17, 62:6-10) and on whether he had the authority to bind Salesforce's directors and other employees under the agreement (144:24-145:2, 147:3-9). Far from refusing to provide non-privileged facts, Mr. Reed here followed proper instruction not to reveal privileged legal analysis germane to Salesforce's license defense. The requested relief should be denied. |
| **Relief Requested**: The Court should compel Salesforce to produce unredacted versions of all documents regarding the negotiations between Salesforce and Uniloc, including unredacted copies of all documents on Salesforce's privilege log and all 179 documents that hit on the search term "Etchegoyen" because Salesforce has waived attorney-client and work product privileges. | |
| The Court should also order Salesforce to identify the document counts for its review, including document counts for the number of search hits, the number of documents reviewed, document count by custodian, the number of documents produced, and the number of documents withheld as privileged. | **ISSUE NO. 2** |
| | **Relief Requested**: The Court should deny WSOU's request to compel Salesforce to reveal privileged advice from its attorneys. Salesforce produced voluminous ***non-privileged*** communications collected from Mr. Reed and outside counsel, including drafts of the Uniloc-Etchegoyen license agreement, correspondence with opposing counsel, and factual communications with outside counsel. WSOU vastly undercounts Salesforce's production of hits on "Etchegoyen," and fails again to identify any "selective" disclosure of or reliance on privileged advice or any privilege waiver. |
| Alternatively, at the very least, Brazos requests that Salesforce provide Brazos and the Court with the necessary information regarding its document review and submit redacted and withheld documents to the Court for *in camera* review of Salesforce's privilege designations. | |
| **Summary**: | |
| Salesforce represented that it provided de-duped hit counts for its email searches of Sam Stake, Ray Zado, and Daniel Reed regarding the negotiation of | |

| Brazos's [Requesting Party] Position | Salesforce's [Responding Party] Position |
|---|---|
| the License Agreement. (Ex. 5.) Salesforce refused to provide the total number of documents returned by the hit counts, and further refused to provide a breakdown by custodian. (Ex. 5.) The limited hit count information provided showed that there were 179 hits for the term "Etchegoyen." (Ex. 5 at 4.)<br><br>Most of the emails that Salesforce produced were heavily redacted, and only 6 hit on the term "Etchegoyen" based on the unredacted content.<br><br>First, the Court should compel Salesforce to produce unredacted documents because Salesforce has selectively redacted its document productions based on whether the information would be helpful or harmful to Salesforce's purported license defense.<br><br>For example, Salesforce almost entirely redacted an email chain between Mr. Reed and Salesforce's outside attorneys, except for snippets intended to show that the parties discussed "patent peace." (Ex. 6 (Reed Dep. Ex. 8) at 1.) The top email of that chain (from Mr. Zado to Mr. Reed) reads as follows: "[one or two words redacted] "full patent peace was the term we used in our discussions." (*Id.*) And the question from Mr. Reed that Mr. Zado is responding to is entirely redacted outside of "Great, thanks." Salesforce's redactions of this exchange are nonsensical except as an attempt to reveal helpful information to Salesforce and to shield critical information that Brazos needs to defend against Salesforce's license defense – a classic use of privilege as a sword and a shield. *See Willy v. Admin. Rev. Bd.,* 423 F.3d 483, 497 (5th Cir. 2005) ("[A] party may not use privileged information both offensively and defensively at the same time. In other words, when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege."). The rest of Salesforce's document productions have been similarly redacted, with only snippets of "helpful" information not redacted. *See, e.g.*, Exs. 7-11 (Reed Dep. Exs. 6-7, 9, 14-15).)<br><br>Salesforce's waiver of privilege in Mr. Reed's deposition also provides a basis to produce the | The Court should also deny WSOU's demands for further burdensome discovery and *in camera* review. Salesforce engaged with WSOU for several weeks to agree to appropriate search terms, and WSOU files its motion five weeks after Salesforce completed its email productions.<br><br>**Summary**:<br><br>WSOU's motion rests on a vast undercount of Salesforce's production of hits on the term "Etchegoyen." WSOU includes in its counts only the unredacted portions of Salesforce's production of emails with the term, ignores that the term "Etchegoyen" also appears in redacted portions of produced documents that set forth privileged attorney-client advice, and further ignores the attachments that Salesforce also produced that hit on "Etchegoyen"—totaling 50 documents in all, not six.<br><br>WSOU also undercounts the percentage of documents hitting on this search term that Salesforce produced. In fact, only 87 documents hit on the term "Etchegoyen," not 179 documents. Of these documents, Salesforce produced 50 to WSOU. That is, Salesforce produced 57.5% of all documents with hits, not 3.4% as WSOU indicates. This nearly 3:2 ratio of non-privileged to privileged documents is eminently reasonable, in view of the importance of the term "Etchegoyen" to the Uniloc-Etchegoyen license.<br><br>WSOU is again mistaken that there has been any "selective" redaction or production of emails. WSOU's primary example only proves Salesforce's point. Salesforce properly disclosed **non-privileged facts** relayed from its outside counsel regarding its discussions with Uniloc's counsel, e.g., "full patent peace was the term *we used in our discussions*." See WSOU Ex. 6 (Reed Dep. Ex. 8).<br><br>Nor does Salesforce's non-redaction of these facts raise any sword/shield concerns. For example, WSOU fails to explain how a nondescript farewell ("Great, thanks.") could |

4

| Brazos's [Requesting Party] Position | Salesforce's [Responding Party] Position |
|---|---|
| unredacted documents.<br><br>Second, the Court should compel Salesforce to provide basic information concerning its document review, including document counts for the number of search hits, the number of documents reviewed, and document counts by custodian.<br><br>Brazos requires relevant statistics to understand the volume that has been returned by the searches, but Salesforce has been unwilling to provide basic information. (*See* Ex. 5.) Alarmingly, the limited information provided by Salesforce showed that there were 179 hits for the term "Etchegoyen", but Salesforce produced only 6 documents that hit on the term "Etchegoyen" based on the unredacted content. Accordingly, the vast majority of these documents were withheld or redacted, despite the fact that they would likely come up in communications that Salesforce contends are "factual", such as the concept of "patent peace" and whether the parties discussed the scope of the License Agreement to include Mr. Etchegoyen.<br><br>At the very least, Brazos requests that Salesforce provide the necessary information on its document review and submit documents to the Court for *in camera* review of Salesforce's privilege designations. | possibly be construed as an improper "sword." *Id.* Indeed, WSOU's sole case (*Wily*) supports denying its motion: "[A] party may ***not use privileged information*** both offensively and defensively at the same time." 423 F.3d 483, 497 (5th Cir. 2005). Because Salesforce has not used privileged information offensively, there is no basis for any waiver under Fifth Circuit law.<br><br>WSOU's five-week delay after Salesforce completed its productions to file this motion is further reason for denial. Salesforce completed its lengthy review and production process over five weeks ago, on February 9. As with Mr. Reed's deposition, WSOU does not like the facts revealed by Salesforce's discovery efforts, but their helpfulness to Salesforce's case is no basis to impose further burden on Salesforce. |

Upon consideration of the arguments made by the parties in the discovery chart and a review of the relevant caselaw, the Court hereby rules as follows:

As for Issue 1, the Court **DENIES** Plaintiff's request.

As for Issue 2, the Court **DENIES** Plaintiff's request.

SIGNED this 3rd day of April, 2023.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

5